IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Davis,                  :
           Petitioner        :
                                :
      v.                      : No. 70 C.D. 2022
                                :
Crothall Healthcare, Inc. (Workers'    :
Compensation Appeal Board),       :
                Respondent    : Submitted: July 15, 2022

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                             FILED: February 1, 2023

Mark Davis (Claimant) petitions this Court for review of the December 29, 2021 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) terminating Claimant's workers' compensation benefits (benefits) based on a finding that he had fully recovered from a work injury sustained on October 18, 2018. Claimant argues on appeal that the WCJ and the Board misapplied the burden of proof and that the medical evidence presented by Crothall Healthcare, Inc. (Employer) was equivocal and insufficient to support a termination of Claimant's benefits. For the reasons that follow, we reverse.

## I. Background

Claimant worked in Employer's environmental services department, where his duties primarily consisted of cleaning, removing trash, and dusting. Certified Record (C.R.), Item No. 19, Notes of Transcript (N.T.), 2/26/20, at 7-8. On

December 3, 2019, Claimant filed a claim petition, alleging that he sustained a work injury on October 18, 2018 from "cumulative trauma to his lower back and bilateral knees as a direct result of his job duties . . . over the course of [14] years" working for Employer, and that he notified Employer of his work injury in a written report dated January 21, 2019. C.R., Item No. 2. Claimant indicated that he last worked for Employer on October 19, 2018, and he sought total disability benefits under the Workers' Compensation Act (Act)[1] from that date "ongoing[.]" *Id.* On December 4, 2019, Claimant filed a penalty petition, alleging that Employer violated the Act when it failed to conduct a prompt investigation upon receiving notice of his work injury, as required by Section 406.1(a) of the Act.[2] C.R., Item No. 5.

The WCJ conducted a hearing on January 8, 2020, at which Employer neither appeared nor was represented by counsel. C.R., Item No. 18, N.T., 1/8/20, at 5. The WCJ noted that Employer had also failed to file an answer as of that date. *Id.* Based on Employer's failure to file a timely answer to the claim petition, Claimant requested relief pursuant to *Yellow Freight System, Inc. v. Workmen's Compensation Appeal Board (Madara)*, 423 A.2d 1125, 1127-28 (Pa. Cmwlth. 1981), in which this Court held that an employer's failure to file a timely answer under Section 416 of the Act[3] precluded the employer from presenting evidence of an affirmative defense

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Added by the Act of February 8, 1972, P.L. 25. Section 406.1(a) requires that an employer and insurer "promptly investigate each injury reported or known to the employer and shall" promptly commence paying any compensation due pursuant to either an agreement on the amount owed or pursuant to a notice or compensation payable or notice of temporary compensation payable. 77 P.S. § 717.1(a).

[3] Section 416 of the Act, 77 P.S. § 821, provides that the adverse party in a workers' compensation proceeding may file an answer within 20 days of the date the adverse party was served the claim or other petition. Every fact alleged in a claim petition, which has not been **(Footnote continued on next page…)**

2

to a claim petition. The WCJ orally granted Claimant's request for relief and subsequently issued a January 13, 2020 interlocutory order (Order) that deemed admitted "[a]ll factual allegations contained in" the claim petition. C.R., Item No. 18, N.T., 1/8/20, at 6; Item No. 8, Finding of Fact (F.F.) No. 7. The Order also granted the claim petition and directed that Employer pay "Claimant total disability benefits from October 19, 2018 until the last day [Employer's answer] could have been timely filed." C.R., Item No. 8 at 5. The Order further indicated that a hearing would be conducted on February 26, 2020, at which Employer, if it appeared, would be provided an opportunity to present a reasonable excuse for its failure to file a timely answer to the claim petition. F.F. No. 10. Claimant would be permitted to testify and present medical evidence in support of his request for "ongoing disability" beyond the date upon which Employer could have filed a timely answer.[4] F.F. Nos. 8, 10.

During the February 26, 2020 hearing before the WCJ, Employer's counsel appeared and requested that the Order be rescinded on the basis that Employer did not receive the claim petition, which was mailed to Employer's corporate headquarters, and not the location where Claimant worked. C.R., Item No. 19, N.T., 2/26/20, at 42, 47. The WCJ rejected as "absurd" the suggestion that Employer's corporate headquarters did not receive the claim petition and denied the requested

---

specifically denied in the adverse party's answer, "shall be deemed to be admitted[.]" *Id.* Furthermore, "[i]f a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the [WCJ] hearing the petition shall decide the matter on the basis of the petition and evidence presented." *Id.*

[4] Claimant served Employer with the claim petition on December 3, 2019. C.R., Item No. 2. Therefore, Employer had to file its answer by December 23, 2019. Employer filed its answer to the claim petition on January 8, 2020. C.R., Item No. 4. Employer issued a Notice of Workers' Compensation Denial on January 10, 2020. C.R., Item No. 29.

relief. *Id.* at 48. At that time, Employer's counsel conceded that Employer had not paid benefits as directed by the Order, despite the Board having denied Employer's supersedeas request. *Id.* at 43. On April 8, 2020, Claimant filed a second penalty petition, alleging that Employer had not complied with the Order directing the payment of benefits.

## A. Claimant's Evidence

At the February 26, 2020 hearing, Claimant testified that he began working for Employer in 2005. C.R., Item No. 19, N.T., 2/26/20, at 7. In 2013, Claimant began suffering from pain in his back and knees that progressed over time. *Id.* at 10-11. He sought medical treatment for these symptoms in 2016 or early 2017. *Id.* at 13, 41. Claimant's treatment consisted of exercise and hot and cold compresses. *Id.* at 14. Claimant notified his supervisor in June 2017 that his work duties increased the pain in his knees and back. *Id.* at 13, 39. In the summer of 2018, Claimant's treatment provider restricted him from lifting more than 15 or 20 pounds. *Id.* at 16. On October 19, 2018, Claimant notified his supervisor and one of Employer's managers that he was unable to complete his work duties, which Claimant believed increased his pain symptoms. *Id.* at 11, 13, 24. Claimant was instructed to "leave and go to [his] doctor." *Id.* at 12.

Claimant did not believe he could return to his full-duty position, but he could work light duty. *Id.* at 15. On cross-examination, Claimant conceded that the written report referenced in the claim petition, by which he allegedly notified Employer of his work injury, was dated January 19, 2020, not January 19, 2019. Claimant also acknowledged that the date of injury set forth in the written report was August 15, 2015. *Id.* at 32; C.R., Item No. 28. Claimant stated that "the [August 15, 2015] date

4

might be wrong," but the report correctly described that he was injured while removing dirt from the front of a building. N.T., 2/26/20, at 34; C.R., Item No. 28.

During subsequent testimony taken at a June 26, 2020 deposition, Claimant acknowledged that, when completing a medical claim form in 2019, he indicated the work injury took place on August 20, 2013. C.R., Item No. 31, Claimant Dep. at 7. Claimant confirmed that the 2013 work injury occurred when he used a three-wheeled dumpster to remove dirt from the grounds in front of a building. *Id.* at 21-22. He believed that August 15, 2015, related to the date he began seeking treatment for his symptoms. *Id.* at 36. This testimony contradicted Claimant's earlier statement that he "first started getting treatment" "around 2017" or 2018. *Id.* at 21. Claimant advised that physical therapy, which he attended three days a week, had improved his symptoms. *Id.* at 35.

Claimant's treating physician, Corey Ruth, M.D., testified by deposition on March 11, 2020. C.R., Item No. 23, Corey Dep. Dr. Ruth first examined Claimant on February 25, 2020. *Id.*, Corey Dep. at 8. At that time, Claimant presented with lower back and bilateral knee pain, and radiating right leg pain that Claimant related to his work duties, which included lifting, bending, and cleaning up debris. *Id.* at 8, 10. Claimant rated his pain that day as an 8 out of 10. *Id.* at 30. Dr. Ruth understood that Claimant's symptoms were aggravated on October 18, 2018, while Claimant removed debris from the front of a building with a three-wheeled dumpster. *Id.* at 9. Claimant advised that he left work that day and sought treatment at the emergency room. *Id.* at 10. Thereafter, Claimant treated his symptoms with physical therapy, chiropractic treatment, and medication. *Id.*

Dr. Ruth's physical examination revealed restricted motion in Claimant's lumbar spine with right leg radiculopathy. *Id.* at 11. Based on his physical

5

examination and a review of Claimant's medical records, Dr. Ruth diagnosed Claimant with bulging discs at L2-L4, L4-L5, and L5-S1, with right L5 lumbar radiculopathy. *Id.* at 11-12. Dr. Ruth subsequently reviewed the results of electromyography testing and a magnetic resonance imaging (MRI) study of Claimant's lumbar spine, which indicated the presence of multi-level disc herniation, lumbar disc desiccation, arthritis at L2-S1, and right lumbar radiculopathy at L5. *Id.* at 12, 14. These findings were consistent with the history provided by Claimant, Claimant's clinical presentation, and the results of Dr. Ruth's physical examination. *Id.* at 14. Dr. Ruth advised Claimant to continue chiropractic therapy, physical therapy, and over-the-counter medication. *Id.* at 12. Dr. Ruth attributed Claimant's condition to repetitive work-related trauma spanning several years. *Id.* at 15. Dr. Ruth did not believe Claimant had fully recovered from his work injury, and he had not released Claimant to return to work, nor did he believe that Claimant could return to his pre-injury position with Employer. *Id.* at 16.

Dr. Ruth agreed on cross-examination that pain is a subjective measure. *Id.* at 30. While Dr. Ruth had a general understanding of Claimant's work duties, he did not know the specific weight Claimant was required to lift, push, or pull. *Id.* at 33. Dr. Ruth acknowledged that his understanding of Claimant's work injury, and the mechanism of that injury, came from Claimant, and Dr. Ruth had no personal knowledge of Claimant's condition prior to February 25, 2020. *Id.* at 19, 35.

Claimant also presented the June 26, 2020 deposition testimony of Maura Brighter, a claims adjustor with Employer's insurance carrier, Gallagher Bassett (Insurer). C.R., Item No. 25, 6/26/20, at 7. Ms. Brighter testified that she reviewed Claimant's file after she took over his claim from another adjuster. *Id.* at 9, 11. Based on Ms. Brighter's review, Insurer issued checks on June 26, 2020, to Claimant

6

in the amount of $28,253.27 and to his counsel in the amount of $7,063.32. Ms. Brighter advised that, prior to issuing those checks, Insurer had not made any payments to Claimant or his counsel. *Id.* at 15. She did not know why the adjustor who previously handled Claimant's case failed to issue any payments. *Id.*

## B. Employer's Evidence

Employer presented the October 22, 2020 deposition testimony of Stephen Cairone, D.O., an orthopedic surgeon who conducted an independent medical examination (IME) of Claimant on May 27, 2020. C.R., Item No. 30, Cairone Dep., 10/22/20, at 8, 10. At that time, Claimant presented primarily with bilateral knee pain, for which he did not take any medication. *Id.* at 12. Claimant advised Dr. Cairone that he suffered a work injury to his back in 2013 while using a wheeled dumpster to clean debris on Employer's premises. *Id.* at 11-12. He first sought medical treatment for this injury in 2017. *Id.* at 11. While Claimant "emphatically" related that he sustained the work injury to his back in 2013, Dr. Cairone advised that some of Claimant's medical records identified 2017 or 2018 as the date of injury. *Id.* at 11, 15. None of the medical records Dr. Cairone reviewed indicated that a traumatic event caused his work injury. *Id.* at 15.

Dr. Cairone's examination of Claimant's cervical spine was "fairly normal[,]" as were examinations of Claimant's thoracic and lumbar spine. *Id.* at 15-16. Dr. Cairone observed no restriction of movement in Claimant's lumbar spine, Claimant's straight leg and nerve root testing yielded normal results, and Claimant demonstrated intact heel and toe walking. *Id.* at 16. Neurological testing results were also normal. *Id.* at 17. Overall, Claimant's physical examination was "completely normal[.]" *Id.*

Dr. Cairone interpreted the report from the MRI of Claimant's lumbar spine as revealing the presence of degenerative spine disease. *Id.* at 18. The report did not suggest any evidence of acute disc herniation, "just arthritis." *Id.* Dr. Cairone postulated that Claimant suffered a lumbar sprain and strain "at some point[,]" and he felt that Claimant had "some element of degenerative disc disease at multiple levels" of his lumbar spine. *Id.* at 20. He opined that, whether Claimant suffered from a lumbar sprain and strain in 2013 or 2018, he had recovered from that condition by the May 27, 2020 IME, as a lumbar sprain and strain would generally resolve within six weeks and Claimant was asymptomatic at the IME. *Id.* at 21.

Dr. Cairone disagreed with Dr. Ruth's assessment of Claimant's condition, as Dr. Cairone was under the impression that Dr. Ruth did not examine Claimant in person, but rather relied exclusively on the results of a telemedicine visit and Claimant's MRI. *Id.* at 22-23, 29. Dr. Cairone felt that lumbar radiculopathy required a clinical diagnosis and he noted that many patients with degenerative changes identified by MRI "have no symptoms whatsoever." *Id.* at 23-24. Regardless of what the MRI indicated, Dr. Cairone made no findings as a result of the IME. *Id.* at 24.

Dr. Cairone did not believe that Claimant's work duties involved repetitive movement, nor did he feel that Claimant's symptoms were caused by repetitive trauma. *Id.* at 25, 27. Rather, they were a facet of Claimant's age.[5] *Id.* at 27. Because Claimant did not seek treatment until several years after the 2013 work incident occurred, Dr. Cairone did not believe that Claimant sustained a work-related injury. *Id.* at 37. As to Claimant's knee pain, Claimant had advised Dr. Cairone that he did not injure them at work, "they just hurt more than [his] back." *Id.* at 38.

---

[5] Claimant was 63 on the date of the IME.

Therefore, based on this medical history, Dr. Cairone did not believe Claimant sustained a work injury to his knees, and he did not believe any issue with Claimant's lumbar spine related to cumulative trauma sustained while working for Employer. *Id.* Dr. Cairone opined, within a reasonable degree of medical certainty, that Claimant was able to work, that he could have continued to work after October 18, 2018, and that Claimant did not require medical treatment for any work incident that took place in 2013. *Id.* at 30. When prompted by Employer's counsel, Dr. Cairone agreed that Claimant had fully recovered from "any type of incident he would have had in 2013[.]" *Id.* at 39.

### C. WCJ Decision

In a June 3, 2021 decision, the WCJ found that Employer provided no adequate excuse for filing an untimely answer to the claim petition. C.R., Item No. 11, F.F. No. 21. Therefore, based on the WCJ's grant of relief under *Yellow Freight*, the WCJ found that Claimant suffered a work injury to his lower back and knees on October 18, 2018. F.F. No. 19. The WCJ credited Claimant's testimony that his initial symptoms were triggered while moving dirt at work with a three-wheeled dumpster. F.F. No. 22. While Claimant's testimony was confusing, contradictory, and "extraordinarily imprecise[,]" the WCJ did not believe Claimant was intentionally deceptive. *Id.* Rather, Claimant consistently testified that his symptoms increased over time, causing him to stop working as of October 18, 2018. *Id.* The WCJ rejected Claimant's testimony to the extent it suggested Claimant's disability extended beyond May 27, 2020, given that Claimant was taking no medication for pain at that time and his clinical examination was normal. *Id.* Furthermore, Claimant's lumbar MRI documented long-standing disc degeneration and arthritis and the reviewing radiologist did not report evidence of any trauma. *Id.*

9

The WCJ also rejected Dr. Ruth's opinion that Claimant continued to be disabled after May 27, 2020 and that Claimant's work injury included diagnoses beyond those identified in the claim petition. F.F. No. 23. The WCJ noted that Dr. Ruth's opinions relied on Claimant's status as a reliable historian and "[n]o reasonable person would consider" Claimant a reliable historian. *Id.* The WCJ's credibility determination was also based on the "paltry number of times" that Dr. Ruth either spoke to or examined Claimant. *Id.* The WCJ accepted Dr. Cairone's testimony that Claimant had fully recovered as of May 27, 2020, given Claimant's intermittent medical treatment and benign MRI results, and Claimant's admission that he did not take pain medication for his pain symptoms. F.F. No. 24.

Regarding notice, the WCJ found that Employer presented no evidence to refute Claimant's testimony that he reported the work injury to his supervisor on October 18, 2018. F.F. No. 15. The WCJ further found that Employer violated the Act when it failed to issue the appropriate documentation following notification of Claimant's work injury and failed to pay Claimant benefits following the Board's denial of supersedeas. F.F. No. 30. By virtue of its late answer, the WCJ found that Employer's contest of the claim and penalty petitions was unreasonable until May 27, 2020, when Dr. Cairone conducted the IME. F.F. No. 25.

Accordingly, the WCJ granted Claimant's claim and penalty petitions and imposed unreasonable contest attorney fees and a penalty equivalent to 30% of the benefits due and owing to Claimant between October 19, 2018, and May 27, 2020. Conclusion of Law (C.L.) Nos. 3, 7. The WCJ concluded that Claimant failed to demonstrate he continued to suffer from a work-related disability after May 27, 2020, and Employer sustained its burden of proving that Claimant had fully

10

recovered from his work injury as of that date. C.L. Nos. 5-6. Therefore, Claimant's benefits were terminated, effective May 27, 2020. WCJ Decision at 16.

Both Claimant and Employer appealed to the Board. Claimant argued that Dr. Cairone's testimony was incompetent, as he refused to acknowledge the injuries set forth in the claim petition that were deemed admitted by virtue of Employer's late answer and the relief granted by the WCJ pursuant to *Yellow Freight.* C.R., Item No. 12. Employer argued that the WCJ erred in granting Claimant relief under *Yellow Freight*, specifically regarding the date Claimant provided notice of his work injury, as the date provided in the claim petition was incorrect. C.R., Item No. 14. Further, Employer argued that Claimant was only entitled to benefits as of the date he provided notice, which the written report submitted into evidence demonstrated was January 21, 2020. *Id.* Accordingly, the WCJ erred in granting Claimant benefits as of October 19, 2018. *Id.*

The Board rejected Employer's argument that the WCJ erred in granting Claimant's *Yellow Freight* motion. C.R., Item No. 16 at 4. While the claim petition erroneously stated that Claimant provided notice in a January 19, 2019 written report, the WCJ accepted Claimant's testimony that he notified Employer of the work injury when he last worked on October 18, 2018. *Id.* Therefore, the WCJ did not err in awarding benefits, effective October 19, 2018. *Id.* at 5. The Board also rejected Claimant's argument that the WCJ erred in terminating his benefits as of May 27, 2020. While the Board agreed that Dr. Cairone failed to acknowledge "the entire work injury," which included cumulative trauma to Claimant's lower back and knees, the Board asserted that Claimant had the burden of demonstrating he continued to be disabled by his work injury. *Id.* at 7. Claimant's evidence only supported a finding of disability through the date of Dr. Cairone's May 27, 2020

11

IME. *Id.* As Claimant failed to demonstrate he remained disabled after that date, the WCJ did not err in terminating his benefits thereafter. *Id.* This appeal followed.[6]

## II. Issue

Claimant argues that the Board erred in affirming the WCJ's termination of his disability benefits because, pursuant to *Yellow Freight*, Claimant was entitled to a rebuttable presumption that his disability continued, which Employer's equivocal and incompetent medical evidence failed to refute.

## III. Discussion

Generally, the claimant bears the burden of proof in a claim petition proceeding to establish the existence of a work-related injury and that the injury continues to cause disability throughout the pendency of the claim petition. *See School Dist. of Phila. v. Workers' Comp. Appeal Bd. (Hilton)*, 117 A.3d 232, 245-46 (Pa. Cmwlth. 2015). When an employer fails, without adequate excuse, to file a timely answer to the claim petition, the employer is deemed to have admitted the factual allegations in the claim petition. *Chik-Fil-A v. Workers' Comp. Appeal Bd. (Mollick)*, 792 A.2d 678, 688 (Pa. Cmwlth. 2002). Having thus admitted to the truth of every factual allegation in the claim petition, the employer is thus barred from presenting any affirmative defenses or challenges thereto. *Heraeus Electro Nite Co. v. Workmen's Comp. Appeal Bd. (Ulrich)*, 697 A.2d 603, 608 (Pa. Cmwlth. 1997). A claimant is not required to corroborate the allegations in his claim petition, "as these allegations stand on their own as competent evidence." *Id.*

---

[6] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Zuchelli v. Workers' Comp. Appeal Bd. (Ind. Univ. of Pa.)*, 35 A.3d 801, 804 n.2 (Pa. Cmwlth. 2011).

Employer did not appeal the Board's order.

12

An employer's failure to timely file an answer is not the equivalent of a default judgment, however, as the claimant must still present evidence regarding any facts that were not well-pleaded in the claim petition, and an employer may rebut such evidence. *Id.* Furthermore, the claimant is only entitled to a presumption of ongoing disability "up to the last day the answer could have been timely filed." *Id.* at 609. Thereafter, where a claimant alleges in a claim petition that his disability is ongoing, he is only entitled to a *rebuttable* presumption that his disability continues from the last date the answer should have been filed throughout the pendency of the litigated matter. *Id.* at 609 n.10. The employer is permitted to offer evidence to rebut this presumption. *Rite Aid Corp. v. Workers' Comp. Appeal Bd. (Bennett)*, 709 A.2d 447, 450 (Pa. Cmwlth. 1998).

Instantly, Claimant argues that the Board erred in affirming the WCJ because Claimant was not required to establish an ongoing disability, as *Yellow Freight* entitled Claimant to a presumption that his disability continued and Employer bore the burden of refuting that presumption. Given that the Board deemed Dr. Cairone's testimony equivocal, and Employer did not appeal that decision, Claimant argues that Employer failed to rebut the presumption of ongoing disability. Accordingly, Claimant urges that this Court reverse the Board's order to the extent it affirmed the WCJ's termination of his benefits.

We agree with Claimant that the WCJ, and the Board, erred in assigning him the burden of proof to demonstrate ongoing disability. While the WCJ correctly treated as admitted the "factual admissions created by Employer's late [a]nswer," and found that Claimant sustained a disabling work injury to his lower back and knees caused by cumulative trauma, the WCJ erroneously placed the burden on Claimant to demonstrate that he "suffered ongoing injuries and disability" after May

13

27, 2020. C.R., Item No. 11, F.F. No. 26, C.L. No. 5. In affirming the WCJ, the Board likewise misapplied the burden of proof, noting that the WCJ only granted Claimant benefits "through the date of [Employer's a]nswer, January 8, 2019,"[7] and that Claimant bore the burden of proving ongoing disability thereafter. *Id.* at 6.

This Court has previously held that misapplication of the burden of proof may constitute harmless error if the result would not have changed had the burden been correctly placed. *City of Phila. v. Civil Serv. Comm'n*, 824 A.2d 346, 349 (Pa. Cmwlth. 2003). Because the WCJ terminated Claimant's benefits based on the credited testimony of Dr. Cairone, we must review that evidence to determine whether it supports the WCJ's finding that Claimant had fully recovered from his work injury. Notably, the Board agreed with Claimant that Dr. Cairone's testimony was equivocal regarding the extent of Claimant's work injury and his full recovery therefrom.

To succeed in a termination petition, an employer bears the burden of proving by substantial evidence that a claimant's disability has ceased or that any remaining conditions are unrelated to the work injury. *Westmoreland Cnty. v. Workers' Comp. Appeal Bd. (Fuller)*, 942 A.2d 213, 217 (Pa. Cmwlth. 2008). The employer satisfies this burden when its medical expert unequivocally testifies, within a reasonable degree of medical certainty, that the claimant has fully recovered and can return to work without restrictions and that there are no objective medical findings to either substantiate the claims of pain or connect them to the work injury. *Udvari v. Workmen's Comp. Appeal Bd. (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997). The

---

[7] While it does not affect our analysis of the issue presented, it should be noted that the WCJ's Order awarded benefits, not through the date of Employer's answer, which it filed on January 8, 2020, but "until the last day" Employer could have timely filed its answer, December 23, 2019. C.R., Item No. 8, at 5.

14

WCJ may terminate benefits only if the WCJ finds that the claimant is fully recovered from all aspects of the work injury. *Central Park Lodge v. Workers' Comp. Appeal Bd. (Robinson)*, 718 A.2d 368, 370 (Pa. Cmwlth. 1998). A medical expert's opinion will not support a termination if the medical expert does not acknowledge the accepted work injuries and does not opine full recovery from those injuries. *Hall v. Workers' Comp. Appeal Bd. (Am. Serv. Grp.)*, 3 A.3d 734, 740 (Pa. Cmwlth. 2010). The question of whether expert medical testimony is unequivocal and, thus, competent evidence to support a WCJ's factual determinations is a question of law subject to our review. *Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods)*, 37 A.3d 72, 80 (Pa. Cmwlth. 2012).

By virtue of Employer's late answer, and the deemed admissions set forth in the claim petition, Claimant "sustained cumulative trauma to his lower back and bilateral knees as a direct result of his job duties in the environmental services department for [Employer] over the course of [14] years." C.R., Item No. 2. Having admitted to the truth of these allegations, Employer was barred from presenting any evidence to rebut them. *Heraeus*, 697 A.2d at 608. While Dr. Cairone accepted that Claimant suffered a lumbar strain and sprain "at some point[,]" he did not consider Claimant's work duties to be repetitive in nature and, as a result, Dr. Cairone did not believe that cumulative trauma caused Claimant's lumbar strain and sprain. C.R., Item No. 30, Cairone Dep. at 20. Dr. Cairone utterly rejected the notion that Claimant sustained a work injury to his knees and, in fact, denied that Claimant sustained *any* work injury, despite his earlier acknowledgement that Claimant suffered a lumbar strain and sprain. Instead, Dr. Cairone opined that Claimant's symptoms, "whatever they may be," were "more related to the aging process than an actual trauma." *Id.* at 38. Ultimately, Dr. Cairone expressed the opinion that

15

Claimant did not exhibit symptoms of a lumbar sprain and strain on May 27, 2020, and he answered in the affirmative when asked if Claimant had fully recovered from "any type of incident he would have had in 2013[.]" *Id.* at 39.

In refusing to acknowledge the full extent of Claimant's work injury, Dr. Cairone clearly could not provide an opinion regarding Claimant's recovery from all aspects of his work injury. Consequently, Employer failed to present sufficient evidence upon which to conclude that Claimant had fully recovered from his work injury and Employer failed to rebut the presumption under *Yellow Freight* that Claimant's disability was ongoing. Therefore, we conclude that the WCJ erred in terminating Claimant's benefits as of May 27, 2020, and the Board erred in affirming the WCJ.

## IV. Conclusion

Both the WCJ and the Board misplaced the burden of proof on Claimant to demonstrate he continued to be disabled by his work injury. Claimant remained entitled to a rebuttable presumption that his disability continued after December 23, 2019, the last date upon which Employer could have filed a timely answer to the claim petition. Because Employer's medical evidence was insufficient to support a conclusion that Claimant had fully recovered from his work injury, the WCJ erred in terminating Claimant's benefits, effective May 27, 2020. Accordingly, we reverse the Board.

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Davis,                 :
           Petitioner      :
                                :
        v.                  :   No. 70 C.D. 2022
                                :
Crothall Healthcare, Inc. (Workers'   :
Compensation Appeal Board),     :
                Respondent    :

# O R D E R

AND NOW, this 1st day of February, 2023, the December 29, 2021 order of the Workers' Compensation Appeal Board is hereby REVERSED.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark Davis,
    Petitioner     :
            :
            :
    v.       :  No. 70 C.D. 2022
            :  Submitted: July 15, 2022
Crothall Healthcare, Inc.   :
(Workers' Compensation Appeal :
Board),        :
    Respondent  :

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ELLEN CEISLER, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY SENIOR JUDGE LEAVITT     FILED: February 1, 2023

    The majority holds that the limited credibility assigned to a claimant's medical evidence by the Workers' Compensation Judge (WCJ) has no relevance to the question of whether compensation benefits can be extended beyond the period of time authorized by *Yellow Freight Systems, Inc. v. Workmen's Compensation Appeal Board*, 423 A.2d 1125 (Pa. Cmwlth. 1981) (*Yellow Freight*). This holding deviates from the principles of *Yellow Freight* and impermissibly relieves a claimant of his burden to prove each element of his claim for disability compensation. Accordingly, with respect, I dissent.

    The Workers' Compensation Act (Act)[1] requires an employer to answer a claim petition within 20 days of its service. Section 416 of the Act states as follows:

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

MHL-1

> Within twenty days after a copy of any claim petition or other petition has been served upon an adverse party, he may file with the [Department of Labor and Industry (Department)] or its workers' compensation judge an answer in the form prescribed by the Department.
>
> *Every fact alleged in a claim petition not specifically denied by an answer so filed by any adverse party shall be deemed to be admitted by him.* But the failure of any party or of all of them to deny a fact alleged in any other petition *shall not preclude the workers' compensation judge* before whom the petition is heard from *requiring, of his own motion, proof of such fact. If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the workers' compensation judge hearing the petition shall decide the matter on the basis of the petition and evidence presented.*

77 P.S. §821 (emphasis added). Although Section 416 does not explicitly address the consequence of filing an answer more than 20 days after service of the claim petition, an untimely answer has been construed to be the equivalent of no answer. *Yellow Freight,* 423 A.2d at 1127. Accordingly, the allegations in the claim petition are deemed admitted by the "adverse party," *i.e.*, the employer. 77 P.S. §821. Nevertheless, the WCJ, on "his own motion," may require proof of any fact that has not been denied. *Id.*

Section 416 of the Act directs that the WCJ "shall decide the matter on the basis of the petition and evidence presented." 77 P.S. §821. This has been construed to mean that "[f]ailure of an employer to timely file an answer is not the equivalent of a default judgment." *Heraeus Electro Nite Company v. Workmen's Compensation Appeal Board (Ulrich)*, 697 A.2d 603, 608 (Pa. Cmwlth. 1997). Rather, the "WCJ remains duty bound to determine whether the totality of the evidence is legally sufficient to satisfy the claimant's burden of proof." *Dandenault v. Workers' Compensation Appeal Board (Philadelphia Flyers, Ltd.)*, 728 A.2d

1001, 1005 (Pa. Cmwlth. 1999). On the other hand, allegations in the claim petition, which have been admitted by the adverse party's late answer, may be sufficient in themselves to meet the claimant's burden of proof. *Hildebrand v. Workmen's Compensation Appeal Board (Fire Department/City of Reading)*, 532 A.2d 1287, 1290 (Pa. Cmwlth. 1987). Further, the employer may not present evidence to rebut the admitted allegations of fact set forth in the claim petition. *Yellow Freight,* 423 A.2d at 1127.

Of particular relevance to the instant matter is the duration of benefits to be awarded in the grant of a *Yellow Freight* motion. A claim petition, which bears little resemblance to a judicial pleading, is submitted on a form promulgated by the Department of Labor and Industry, Bureau of Workers' Compensation. 34 Pa. Code §131.5. As is common in any application, the claim petition form presents a series of questions, with space allotted for their answers. One such question asks the claimant to identify the duration of the alleged disability, whether for a fixed period of time or an "ongoing" basis.

In *Heraeus*, 697 A.2d 603, this Court considered the meaning of "present" as used in a claim petition in response to the question on duration of the alleged disability. When the employer's answer was not timely filed, the claimant filed a *Yellow Freight* motion under Section 416 of the Act. The employer argued that the petition's filing date fixed the maximum duration of compensation that could be awarded on the claimant's *Yellow Freight* motion. The employer explained that the petition "speaks" as of the date it is filed and cannot predict when the claimant's "disability will cease or even be reduced, if ever." *Heraeus*, 697 A.2d at 609. It follows that the employer cannot make an admission about the future. This Court agreed with this argument, at least in part. It held, first, that the WCJ properly

construed the word "present" to signify a request for ongoing disability benefits and not for a closed period of time, terminating as of the petition's filing date. However, this Court limited the duration of a *Yellow Freight* motion for ongoing benefits "to the last day the answer could have been timely filed." *Id.* As a result, the employer was free to present evidence relevant to "the disability existing after the last date the answer is filed." *Id.*

In *Heraeus*, the employer presented no evidence on the duration of the claimant's injuries. Rather, the employer limited its defense to the claim that it had an adequate excuse for its untimely answer, which defense this Court rejected. In the absence of any evidence on the duration of the claimant's work injuries, this Court held that the WCJ was "entitled to conclude" on the basis of the allegations in the claim petition that the claimant's pulmonary injuries, consisting of asthma, chronic bronchitis, emphysema and chronic obstructive pulmonary disease caused by her exposure to toxins in the workplace environment, would continue indefinitely until the employer presented evidence that the claimant's "disability is terminated, reduced or otherwise resolved." *Id.* at 610.

*Heraeus* established several principles. First, where the employer does not file a timely answer to a claim petition that seeks "ongoing" disability compensation, the WCJ may award benefits through the last date the employer's answer is due. Second, although the employer may not present evidence to contradict allegations of fact in the claim petition, it may present evidence to refute a claim for ongoing benefits beyond the date the answer was due. Likewise, the claimant may present evidence to support a continuation of benefits beyond the employer's answer date. In either case, the WCJ "shall decide the matter on the basis of the petition and the evidence presented." Section 416 of the Act, 77 P.S.

§821. *Heraeus* acknowledged the discretion retained by the WCJ in making this decision.

The majority holds that the WCJ and the Workers' Compensation Appeal Board (Board) erred in awarding Mark Davis (Claimant) benefits up to the date that Claimant's medical evidence was found credible and not beyond. The majority concludes that Claimant's medical evidence, which was rejected by the WCJ as not establishing causation beyond May 27, 2020, was irrelevant. The majority reasons that Claimant's evidence could not be used to rebut the so-called presumption that Claimant's disability was ongoing beyond the date Crothall Healthcare, Inc.'s (Employer) answer was due.[2] I disagree. The WCJ must consider "whether the totality of the evidence is legally sufficient to satisfy the claimant's burden of proof," and this includes Claimant's evidence. *Dandenault*, 728 A.2d at 1005.

Given the claim petition's allegation of injuries to "lower back and bilateral knees" sustained by Claimant while working "in the environmental services department," the WCJ's interlocutory order granted Claimant's *Yellow Freight* motion. WCJ Interlocutory Order, 1/13/2020, at 3; Reproduced Record at 21a (R.R.____). This order awarded benefits from October 19, 2018, the date Claimant

---

[2] *Heraeus* stated that in a *Yellow Freight* motion on a claim petition requesting ongoing disability compensation, there is a presumption that benefits will continue beyond the last day for the employer's answer. The majority believes that only evidence from the employer can rebut this presumption. First, the "rebuttable presumption" discussion is *obiter dictum* that was used to justify the employer's ability to present evidence on the duration of benefits. *Heraeus*, 697 A.2d at 609 n.10. Second, the rebuttable presumption comes into play only where the WCJ concludes, as did the WCJ in *Heraeus*, that the allegations in the claim petition were adequate to establish a disability beyond the answer date. *Id*. at 610. By contrast, here, the WCJ concluded that Claimant needed to present medical evidence to prove duration beyond the answer date. In sum, the rebuttable presumption is subject to the WCJ's exercise of discretion to "decide the matter on the basis of the petition and evidence presented." Section 416 of the Act, 77 P.S. §821.

stopped working, to the last date for Employer's answer, *i.e.*, December 23, 2019. It also ordered that Claimant "shall be afforded the opportunity to present medical evidence in support of his request for ongoing disability beyond the date the Answer could have been timely filed." *Id.* The WCJ "was entitled to conclude" that the allegations in the claim petition were inadequate to establish that Claimant's lower back and bilateral knees injuries would continue indefinitely. *Heraeus*, 697 A.2d at 609 (WCJ was "entitled to conclude" claim petition allegations stated a claim for benefits beyond the answer date). Accordingly, Claimant needed to present medical evidence to establish this fact.

In any claim petition where the causal connection between the alleged injury and ongoing disability is not obvious, the claimant must present unequivocal medical evidence to establish an entitlement to compensation. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 402 (Pa. Cmwlth. 2015). Here, the WCJ credited Claimant's doctor, Dr. Ruth, but only to the extent he determined Claimant to be disabled through May 27, 2020. As we explained in *Dandenault*:

> The WCJ's authority and discretion to determine the weight and credibility of evidence are not terminated merely because the employer is precluded from presenting evidence. Under these circumstances, *the WCJ remains duty bound to determine whether the totality of the evidence is legally sufficient to satisfy the claimant's burden of proof*.

*Dandenault*, 728 A.2d at 1005 (citations omitted) (emphasis added). Further, "while Section 416 [of the Act] provides a claimant the advantage of establishing certain facts, it does not operate to automatically satisfy a claimant's burden of proof. In *every* claim proceeding, the claimant bears the burden of proving *all* elements

MHL-6

necessary to support an award of compensation." *Dandenault*, 728 A.2d at 1006 (citations omitted) (emphasis in original).[3]

Employer's late answer did not convert the claim petition into a termination petition and did not deprive the WCJ of discretion to evaluate the claim petition and the evidence presented on the duration of Claimant's disability. Without credible medical evidence to support his claim of an ongoing disability after May 27, 2020, Claimant did not meet his burden on the claim petition. Accordingly, the Board affirmed the WCJ's decision to award benefits for a closed period of time.

In any case, the Board's adjudication can be affirmed on other grounds. Employer's credited medical evidence, improperly dismissed by the Board as equivocal, fully supported the WCJ's conclusion that Claimant was fully recovered and needed no treatment after May 27, 2020. Stated otherwise, Employer's expert fully rebutted any presumption that Claimant's disability was ongoing.

Employer's medical expert, Dr. Cairone, was advised by Claimant that he injured his back in 2013 while wheeling a dumpster at work. However, Claimant's medical records suggested an injury in 2018. Dr. Cairone testified that Claimant "never hurt his knees, according to him. His knees just hurt when I saw him." Cairone Deposition Testimony, 10/22/2020, at 33 (N.T.___); R.R. 95a. Dr. Cairone did "not really believe that there was a work injury," N.T. 36, R.R. 98a, noting that "[C]laimant flat out said I never injured [m]y knees at work. I never injured my knees; they just hurt more than my back." N.T. 38; R.R. 100a. As to Claimant's back, Dr. Cairone found Claimant sustained "a lumbar sprain and strain at some point" and had some age-related degenerative issues. N.T. 20; R.R. 82a.

---

[3] If seeking ongoing wage loss benefits, the claimant must prove that the disability continues throughout the pendency of the claim petition proceeding. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994).

The radiologist who did the 2020 magnetic resonance imaging found no evidence of trauma or an acute disc herniation, only arthritis. WCJ Decision at 9.

Dr. Cairone opined that Claimant was fully recovered from his work injuries; able to perform his time of injury position without restriction; and was no longer in need of medical treatment of any kind, as of his examination on May 27, 2020. On Claimant's recovery, the following colloquy occurred:

> Q. Do you continue to believe that [C]laimant recovered from any type of incident he would have had in 2013, which is when he said the incident occurred, and could have continued to work without restriction as of October 18, 2018?
>
> A. Yes.

N.T. 39-40; R.R. 101a-02a. Dr. Cairone concluded: "I do feel that he could return to his full duty job effective immediately. I do not find *any* impairment *whatsoever*." R.R. 117a (emphasis added).

It is well established that a medical expert need not believe that a work injury occurred in order to opine on a claimant's recovery. Rather, "[t]he [medical] expert's opinion is competent if he assumes the presence of an injury and finds it to be resolved by the time of the [Independent Medical Examination]." *Hall v. Workers' Compensation Appeal Board (American Service Group)*, 3 A.3d 734, 741 (Pa. Cmwlth. 2010) (internal citation omitted). Dr. Cairone found nothing in Claimant's medical records or upon his physical examination to support a work injury. However, Dr. Cairone assumed the existence of Claimant's back and knee symptoms and expressly opined that Claimant had "*recovered from any type of incident* he would have had in 2013." N.T. 39-40; R.R. 101a-02a (emphasis added). Dr. Cairone opined that Claimant could perform his pre-injury job and did not require any medical treatment for his back or his knees. In light of Dr. Cairone's

examination, expert report and testimony, the Board erred in concluding that Dr. Cairone's testimony was equivocal and, thus, not competent evidence of his recovery as of May 27, 2020.[4]

The WCJ was careful to credit Dr. Cairone's testimony only to the extent it conformed to the admitted allegations in the claim petition. In this, and in every other respect, the WCJ was meticulous in discharging her responsibilities under Section 416 of the Act, carefully basing her decision on the "petition and evidence presented." 77 P.S. §821. Simply, Claimant did not meet his burden of proving an ongoing disability beyond May 27, 2020. I would affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[4] Employer did not cross-appeal the Board's adjudication because it prevailed before the Board and was not aggrieved. *See Basile v. H&R Block, Inc.*, 973 A.2d 417, 422 (Pa. 2009) ("[A]ppellee should not be required to file a cross appeal because the Court below ruled against it on an issue, as long as the judgment granted Appellee the relief it sought."), and *Chicoine v. Workmen's Compensation Appeal Board (Transit Management Services)*, 633 A.2d 658, 663 (Pa. Cmwlth. 1993) ("only 'aggrieved' parties may appeal, and a party who prevails simply is not an aggrieved party and has no standing to appeal") (internal citation omitted). As this Court has recognized, a party may not appeal the adjudicator's rationale in an opinion; it may only appeal an order. *Jiffy Mini Mart, Inc. v. Pennsylvania Gaming Control Board* (Pa. Cmwlth., Nos. 1661 C.D. 2019 and 58 C.D. 2020, filed July 7, 2020) (unreported).